UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GARRY L. LEGETTE, | ) | Civil Action No.: 4:06-2928-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| PROMUS HOTELS d/b/a Kingston Plantation, | ) ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

In the present case, Plaintiff alleges causes of action for race discrimination. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 28), which was filed January 17, 2008. Plaintiff's response to the Motion for Summary Judgment was due February 4, 2008. No response has been filed. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this motion is potentially dispositive of Plaintiff's claims, this report and recommendation is entered for review by the district judge.

**II.     PROCEDURAL HISTORY**

On May 27, 2008, the district judge entered an Order (Document # 33) staying the case due to the suspension of Plaintiff's counsel until counsel was reinstated to practice before this Court or Plaintiff retained new counsel. It appears from this court's records that Plaintiff's counsel has been reinstated to practice before this Court. The stay was lifted by Order (Document # 42) dated December 10, 2008. On January 20, 2009, the district judge entered an Order (Document # 45) dismissing this case without prejudice pursuant to Rule 41(b), Fed.R.Civ.P., for failure to prosecute.

On January 30, 2009, Plaintiff filed a Motion for Relief from Judgment (Document # 50), requesting that the case be reopened and that Plaintiff be given additional time to file a Response to the Motion for Summary Judgment. The district judge entered an Order (Document # 52) February 5, 2009, reopening the case but declining to allow additional time to respond to the summary judgment motion.

### III.  FACTS

The facts as stated by Defendant in its Motion for Summary Judgment are undisputed and supported by the record and, thus, are set forth below.

Plaintiff was employed by Defendant at Kingston Plantation, a hotel and condominium resort in Myrtle Beach, South Carolina. Hired on March 26, 2002, he was an Assistant Executive Housekeeper in the Condominium Housekeeping Department. (Exh. A, Plf. Depo. p. 47-49.) As a supervisor, Legette was responsible for managing the employees in the department. Alease Brooks Gainey, a housekeeper, reported to Joyce Richardson, who in turn reported to Legette. (Exh. A, Plf. Depo. p. 90.) Plaintiff's supervisor was Frances Wilson, Assistant Executive Housekeeper. (Compl. ¶ 5.) All of the foregoing individuals are black.

In or around early December 2004, Gainey reported to one of her supervisors that a note asking her to call a certain phone number "for a good time" had been left on her cleaning cart in the Brighton Tower condominium building where she worked. (Compl. ¶ 6.) A few weeks later, Jason Smith allegedly approached Gainey in a hallway on December 11, 2004, while wearing only a shirt, boxer shorts, and socks. Smith supposedly asked Gainey for washcloths and whether she wanted to "take a break." When Gainey handed Smith some washcloths, she purportedly responded "no" to his

request regarding a break, was then grabbed by the wrist, but managed to pull away. (Compl. ¶ 6; see also Exh. B, Gainey Compl. ¶¶ 5-7, 9.)

After this incident occurred, Gainey explained to Richardson and Legette what occurred. Legette then took Gainey with him to meet with Wilson, but Legette reported only that Gainey had been bothered by a man. (Exh. C, December 15, 2004 written statement.) Legette never explained the severity of the situation to Wilson. Because she was not so informed, Wilson informed Legette that he should obtain a written statement from Gainey. (Exh. C.) At no time did Legette report the incident to the police. (Id.; Exh. D, 12/13/04 written statement signed by Plaintiff.)

The next evening, Legette provided Wilson with a copy of a statement from Gainey that explained what supposedly had occurred. This was the first time Wilson learned the severity of Gainey's allegations. (Exh. C.) Wilson immediately tried to contact Gainey, but she had left for the day. Wilson did, however, contact Legette to discuss the situation. She also contacted her supervisor, Angela Fricano, Director of Condominium Housekeeping, who, in turn, contacted Marion Marti, Director of Human Resources and Ray Davis, Director of Safety/Security. The following day, Fricano, Marti, and Davis met with Legette to investigate the situation and why Legette failed to report the alleged severity of it to Wilson or to the police. Legette admitted he should have done more, but he tried to suggest that Wilson was at fault. (Exh. D.)

After reviewing all of the information and documentation, Defendant determined that Legette failed to follow the company's policies and procedures, even though he had been repeatedly trained and counseled on them.[1] (Exh. A, Plf. Depo. p. 55-61.) Despite such training, Legette failed to

---

[1] The relevant policies and procedures on which Plaintiff had been trained by Defendant are numerous. See Exh. F, New Team Member Orientation Checklist signed by Plaintiff 03/26/02; Exh. G, Annual Safety/Security and Emergency Procedures Training Completion

-3-

properly report and handle a reported serious assault in the workplace.[2] (Exh. E, Employee Problem/Solution Notice dated 12/28/04.) In fact, one of Defendant's policies specifically states employees are to "[r]eport all accidents/incidents, no matter how slight, to [their] supervisor immediately. Reporting on [their] next work shift is not an acceptable practice." (Exh. H, emphasis added.) Accordingly, Legette's employment was terminated effective December 28, 2004. (Exh. O, Personnel Authorization Form dated 12/28/04.)[3] As determined by the South Carolina Employment Security Commission, Plaintiff was "discharged for gross negligence by failing to timely and properly report a serious incident involving an associate housekeeper who had been assaulted in the workplace." (Exh. P, S.C. Employment Security Commission decision.)[4]

---

Certificates signed by Plaintiff 08/01/02, 07/15/03, and 05/17/04; Exh. H, Hilton Hotels Corporation Harassment-Free Workplace Policy signed by Plaintiff 03/27/02 and 05/13/03; Exh. I, Team Member Responsibilities Regarding On-the-Job Injury/Accident signed by Plaintiff 03/27/02 and 07/15/03; Exh. J, Risk Control Policy signed by Plaintiff 03/27/02; Exh. K, Safety Commendation/Disciplinary Policy signed by Plaintiff 03/27/02; Exh. L, Departmental Safety & Security Procedures signed by Plaintiff 06/30/02; Exh. M, Initial Safety & Security Procedures signed by Plaintiff 03/27/02.

[2]See also Exh. N, General Safe Work Practices signed by Plaintiff 07/15/03, which states "[a]ll accidents, injuries and illnesses are to be reported to the appropriate manager/supervisor immediately, regardless of severity."

[3]See also Exh. Q, Standards of Conduct signed by Plaintiff 03/27/02 (emphasis added), which states employees may be terminated for, inter alia, violating the "Harassment-Free Workplace Policy and/or failure to report any such incident," "willful or negligent failure to abide by hotel safety rules and practices or conduct that tends to create a safety hazard," or "failure to report on the job accident or injury to a guest or team member."

[4]The Employment Security Commission further stated:
The record shows that a female associate was accosted by a man who exposed himself and grabbed her, while she was cleaning a unit. She managed to free herself and run to safety. The details of the incident were promptly reported to the [Plaintiff]. The [Plaintiff] escorted the associate to his supervisor's office, and stated that the associate had been bothered by a man, but he failed to disclose the serious nature or details of the incident to his supervisor. Since the supervisor

## IV.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the

---

> was unaware of the gravity of the situation that had occurred, she told the [Plaintiff] to submit a report, and later sent to [sic] the associate back to work with a co-worker. The associate should not have been sent back to work under the circumstances and the police should have been immediately notified. However, because of the [Plaintiff's] failure to disclose what had actually transpired at the time of the incident, no further action was taken until the next day when management reviewed the [Plaintiff's] report. The [Plaintiff] was discharged for violating policy and his gross negligence in handling this matter.

(Exh. P, emphasis added.)

substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V.    DISCUSSION

Plaintiff asserts two causes of action: race discrimination under 42 U.S.C. § 2000(e) (Title VII) and race discrimination under 42 U.S.C. § 1981. A claim for race discrimination under § 1981 is analyzed in the same manner as a race discrimination claim under Title VII. Gairola v. Commonwealth of Va. Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985). Thus, Plaintiff's two causes of action will be discussed together.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a burden-shifting scheme for proving cases of intentional discrimination under Title VII.[5] Under McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of discrimination, by showing (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002). The fourth element can be established by presenting evidence raising an inference of discrimination. See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir. 2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)).

Once Plaintiff has established a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true

---

[5]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on race.

Defendant concedes that Plaintiff meets the first and third requirements for a prima facie case of employment discrimination; as a black male, he is a member of a protected class and he suffered an adverse employment action when he was terminated. However, Defendant asserts that Plaintiff's job performance was not satisfactory because the undisputed evidence reveals that Plaintiff violated company policy by not reporting to his supervisors the full extent of a serious incident of possible sexual assault on one of his subordinates. His subordinate, Gainey, was allegedly propositioned and grabbed by a man while she was at work on December 11, 2004. She reported the incident to Legette the same day and he sent her back to work without immediately contacting someone about the incident. When he did report the incident to his supervisor, Wilson, later that day, he stated only that someone had "bothered" Gainey. Plaintiff admitted that he should have done more on December 11, 2004, when Gainey first reported the incident to him.

Defendant asserts that Plaintiff's inactions violated numerous policies, on which Plaintiff had been trained, including the requirement to "[r]eport all accidents/incidents, no matter how slight, to [his] supervisor immediately. Reporting on [his] next work shift is not an acceptable practice." As such, Defendant argues, Plaintiff's job performance was not satisfactory. However, Plaintiff did report the incident to his supervisor the same day it happened. In his deposition, Plaintiff testifies that, after Gainey explained to him what happened, he took her to her immediate supervisor and then

called Wilson over the phone to tell her. Plaintiff Dep. p. 61. Thus, it appears that Plaintiff did report the incident to his supervisor in a timely fashion, he just failed to recognize the gravity of the situation. Nevertheless, the record reveals that Plaintiff's supervisor, Wilson, as well as Marion Marti from Human Resources and Ray Davis from the Department of Safety/Security, felt that the incident should have been reported to the police and that Plaintiff's failure to do so or to appreciate the seriousness of the allegations was unsatisfactory. It is the employer's perception of job performance, and not the employee's perception, that is controlling. See, e.g., Evans v. Tech. App. & Serv. Co., 80 F.3d 954, 960 (4th Cir.1996). Plaintiff presents no evidence to show that he was performing his job satisfactorily. Thus, Plaintiff fails to establish a prima facie case of race discrimination.

Assuming, arguendo, Plaintiff's job performance was satisfactory, Plaintiff still fails to establish a prima facie case of race discrimination because he does not point to other employees outside his protected class that did not suffer the adverse employment action in a similar situation. Plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F2d 577, 583 (6th Cir. 1992)(citing Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); Cox v. Electronic Data Systems Corp., 751 F.Supp. 680 (E.D.Mich.1990)); Radue v. Kimberly-Clark Corp., 219 F3d 612,617-18 (7th Cir.

2000)(holding that plaintiff must demonstrate that the same supervisor was involved in comparable situations to demonstrate disparate treatment of similarly situated employees); Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 910 (8th Cir. 1999)(same); Shumway v. United Parcel Serv., Inc., 188 F.3d 60, 64 (2d Cir. 1997)(employees were not similarly situated because they were not supervised by the same person).[6]

In his Complaint, Plaintiff alleges "a similarly situated white male employee, Philip Nantz, had received no disciplinary action for not calling the police, involving a similar incident." Complaint, ¶ 9. Plaintiff has not responded to the Motion for Summary Judgment and has not presented any evidence regarding Mr. Nantz or the alleged similar incident. Furthermore, Plaintiff's own allegations reveal that Mr. Nantz was not a similarly situated employee because he was Frances Wilson's supervisor and Wilson was Plaintiff's supervisor. Id. at ¶ 5. Defendant presents Plaintiff's deposition testimony in which he admits that he is unaware of any similar incident involving Nantz or how Nantz was allegedly treated more favorably. Plaintiff Dep. pp. 78, 123-24. Thus, Plaintiff fails to point to any similarly situated employee outside his protected class that was treated more favorably in a similar situation. Plaintiff also fails to present any other evidence raising an inference of discrimination. Therefore, Plaintiff fails to establish a prima facie case of discrimination on this element as well.

Because Plaintiff cannot meet his initial burden of establishing a prima facie case of discrimination, there is no need to move further through the burden-shifting analysis. However,

---

[6] There is no published Fourth Circuit case on point; however, the Fourth Circuit has cited with approval the precedent in this string cite in the unpublished cases of Flateau v. South Carolina Commission for the Blind, 2002 WL 31553805 (4th Cir. 2002); Heyward v. Monroe, 1998 WL 841494 (4th Cir. 1998); Edwards v. Newport News Shipbuilding and Dry Dock Co., 1998 WL 841567 (4th Cir. 1998).

assuming arguendo Plaintiff fulfilled his initial burden, Defendant has produced a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff failed to recognize the severity Gainey's allegations nor did he follow through after Gainey's report to him by properly reporting the situation to his supervisors. This is a legitimate, nondiscriminatory reason for Plaintiff's termination. Thus, the burden shifts back to Plaintiff to establish that Defendant's reasons for his termination were pretextual.

Plaintiff presents no evidence to satisfy his burden of establishing that Defendant's proffered reason for his termination is merely pretext for a discriminatory reason. There is no evidence in the record of any racial discrimination. It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[7] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer"). It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.

---

[7] "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

Even a reasoned decision based on incorrect facts is not evidence of pretext. <u>Pollard v. Rea Magnet Wire Co.</u>, 824 F.3d 557, 559 (7th Cir. 1987), <u>cert</u>. <u>denied</u>, 484 U.S. 977 (1987).

Because Plaintiff has failed to meet his burden of establishing that Defendant intentionally discriminated against him, summary judgment is appropriate on Plaintiff's claims.

## VI.     CONCLUSION

For the reasons stated above, it is recommended that the Motion for Summary Judgment (Document # 28) be granted and this case be dismissed.

s/Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge

February 6, 2009  
Florence, South Carolina

**The parties' attention is directed to the important notice on the following page.**